## EDMONSON v. TINSLEY. (No. 761.)

Court of Civil Appeals of Texas. Waco.
March 7, 1929.

Jerry E. Clarke and Wm. C. Morrow, both of Hillsboro, for appellant.

Horton B. Porter, of Hillsboro, for appellee.

BARCUS, J. In this suit appellant seeks to recover from appellee a real estate commission which he claims is due him by reason of his having exchanged a tract of land belonging to appellee for land owned by T. B. Stafford. Appellant sought to recover a 2½ per cent. commission on the exchange value and 5 per cent. on the cash received by appellee for her land. Appellee, among other defenses, alleged that she had employed her son, Jim Tinsley, to sell or exchange her property, and had agreed with him to and had paid him $250 for selling said land to said Stafford, and denied specifically that appellant was her agent or that he had anything to do with the exchange, or that she had employed him in any way, and alleged that, by reason thereof, appellant was not entitled to recover.

The cause was tried to a jury, and, at the conclusion of the testimony, appellant requested a peremptory instruction, which was refused, and the cause submitted on two special issues. No other issues were requested. In answer to the issues submitted, the jury found that appellant was not the procuring cause of the exchange of lands, and that his services in procuring the exchange were of no value. Based on said findings of the jury, the trial court entered judgment denying appellant any relief.

Appellant excepted to the portion of appellee's answer which alleged she had paid to her son, Jim Tinsley, $250 as a real estate commission for his having as a real estate broker consummated the exchange of her property with Mr. Stafford, and objected when the testimony was offered in evidence by Mrs. Tinsley and her son, Jim Tinsley, to the effect that she had paid said $250 for said services, on the ground that said pleadings did not present any defense and the evidence offered in support thereof was irrelevant, immaterial, and highly prejudicial. The trial court overruled appellant's special exception, and overruled his objection to said testimony. Appellant by proper assignments and propositions presents the trial court's rulings with reference thereto as error. We sustain these assignments. Almost this identical question was involved in the case of Stephenson v. Jackson (Tex. Civ. App.) 128 S. W. 1196, and it was there held that this-

character of testimony was inadmissible and its admission over objection properly made was ground for reversal. In Ellerd v. Murray (Tex. Civ. App.) 247 S. W. 631, it was held error for the trial court to admit testimony that a broker had settled with one of the parties to an exchange of properties for less than a full commission. The mere fact that the owner of property has paid a commission for its sale would not prevent the broker who was entitled thereto from recovering the commission justly due him. Appellee contends that the testimony of Jim Tinsley and his mother, to the effect that she had paid the $250, was admissible because appellant, while on the stand, in answer to questions propounded to him by his counsel, stated that he had no knowledge of any commission being paid by Mrs. Tinsley to her son, Jim Tinsley; her contention being that this opened up the entire transaction and authorized them to testify that as a matter of fact a commission had been paid. We cannot agree with this contention. Neither Jim Tinsley nor his mother testified that appellant knew the $250 had been paid or that she had agreed to pay same prior to the consummation of the trade, or that he had any knowledge thereof. It was not in rebuttal nor in contradiction of his testimony. The fact that he testified that he did not know of a commission being paid would not authorize proof that said commission was paid without any knowledge or information on his part.

The trial court by the first question asked the jury, in substance, whether appellant was the procuring cause of the exchange of the lands, and defined procuring cause in the following language: "By 'procuring cause' is meant the efficient, inducing and controlling cause from which proceeds continuous and unbroken negotiations from the acts of the agent to the final consummation of the sale."

Appellant objected to this definition because it was in the abstract and was inclined to confuse the jury and lead them to believe that, although the plaintiff may have actually procured the party with whom the defendant dealt directly and made the sale, he would not be the procuring cause of the sale. He further objected because it did not include the proposition of law that, even though the plaintiff was not present and did not participate in the final consummation of the sale, and though the sale was made upon different terms from those discussed between the parties, if the plaintiff procured the party with whom the defendant dealt directly, and if through his efforts he became the procuring cause and brought the parties together, he would still be the procuring cause of the exchange. In connection with said objection, appellant presented a definition embodying said contentions. The trial court overruled appellant's objections and refused to give the definition submitted. The facts in this case show without dispute that Mrs. Tinsley owned 206 acres of land in Hill county, which was incumbered with a $10,000 lien, which she was extremely anxious to exchange for property clear of debt; that Jim Tinsley, her son, had charge of her affairs to the extent that she never made any deal or transaction with reference to her property without consulting him; that she told him of her desire, and that a number of real estate men had talked with Jim Tinsley about the matter and had taken prospective purchasers out to see the land; that appellant, a real estate agent in Hillsboro, talked with Jim Tinsley about the matter, and he told appellant that there was no necessity of seeing his mother, that he had charge of the matter for her; that appellant told Jim Tinsley about Mr. Stafford, who owned a 205-acre tract in Hill county which was rough farming land, clear of debt, and which he thought Stafford would trade with Mrs. Tinsley; that, growing out of this relationship, Jim Tinsley had appellant take his mother out to see the Stafford land, and then appellant took Stafford to see the Tinsley land, and carried back and forth various propositions over a period of several weeks; that during the negotiations appellant introduced the Tinsleys and Stafford and got them in touch with each other; that on a certain Saturday Mr. Stafford came into appellant's office and made a proposition of exchange and said he would be back the following Monday; that appellant communicated said fact to Jim Tinsley; that, instead of coming back Monday, Mr. Stafford, immediately after leaving appellant's office on said Saturday, went by the filling station where Jim Tinsley was working, and took up direct negotiations with him and his mother and did not thereafter return to appellant's office; that a few days thereafter Jim Tinsley and Mr. Stafford went to the town of West and made a contract to exchange the respective tracts of land; that appellant knew nothing further about the transaction until a short time thereafter he saw where the deeds of exchange between said parties had been recorded, under the terms of which Stafford and Mrs. Tinsley had exchanged their lands, Mr. Stafford giving his clear of debt and assuming the $10,000 obligation against Mrs. Tinsley's land. The record shows that Jim Tinsley, in addition to running a gasoline filling station, had made some real estate sales and had engaged in other lines of business. The law seems to be well settled that, where a broker who has been employed by the owner, brings the owner of property and a purchaser together and a sale or exchange is actually made, though on different terms from those listed with the broker by the owner, he is entitled to his commission if as a matter of fact he produced the purchaser who did actually purchase the property from the owner. This principle of

120

law was clearly enunciated by the Supreme Court in the case of Goodwin v. Gunter, 109 Tex. 56, 185 S. W. 295, 195 S. W. 848. This same doctrine has been upheld many times and was reviewed and authorities cited in Keener v. Cleveland (Tex. Com. App.) 250 S. W. 151. Article 2189 of the Revised Statutes requires the trial court, in submitting special issues, to submit such explanations and definitions of legal terms as shall be necessary to enable the jury to properly pass upon and render a verdict on such issues. The definition of procuring cause given by the trial court, as applied to the facts in this case, was subject to the criticism made by appellant. Appellant was entitled to have the jury instructed that it was not necessary for him to be actually present at the time the exchange was consummated to have been the procuring cause of the sale. If appellant was employed to sell or exchange appellee's land, and did produce the puchaser who made an exchange of his property for that of appellee, then as a matter of law he was the procuring cause thereof, whether he was present when the contract for exchange was made or not. The definition of procuring cause given by the court, as applied to the facts in this case, is, we think, incorrect, in that it is not necessary for the negotiations for the exchange or sale of land to continue unbroken in order for a real estate broker to be entitled to his commission for having been the procuring cause of the sale. If as a matter of fact a broker produces a purchaser who is ready, able, and willing to, and who does, buy on terms satisfactory to the owner, he is entitled to his commission, although the owner and the purchaser may temporarily break off negotiations with reference thereto. Neither is it necessary for the acts of the agent to keep up negotiations until the trade is finally consummated. If the agent brings the parties together and they then, independent of the acts of the agent, continue negotiations until the trade is consummated, he is as a matter of law the procuring cause. We think the special instruction defining procuring cause, requested by appellant, should have been given.

The judgment of the trial court is reversed, and the cause remanded.